505 A.2d 259

Elton C. TURNER

v.

LETTERKENNY FEDERAL CREDIT UNION, the Board of Directors of Letterkenny Federal Credit and William T. Grier, Charles G. Hoover, Gaylord L. Peters, Adrian E. Reeder, Doris E. Timmons, James H. Miller, Stanley E. Sprankle, Bruce C. Hershey and Richard E. Baumunk, of the Board of Directors of Letterkenny Federal Credit Union, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 17, 1985.

Filed Dec. 27, 1985.

Reargument Denied March 10, 1986.

George F. Douglas, Jr., Carlisle, for appellants.

Frederic G. Antoun, Jr., Assistant District Attorney, Chambersburg, for appellee.

Before WICKERSHAM, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

This an appeal from a judgment entered in the Court of Common Pleas of Franklin County. Appellant asserts that the trial court erred in denying appellant's motions for judgment n.o.v. and a new trial. A jury rendered a verdict in appellees' favor, finding that appellant's credit union had wrongfully discharged him. We reverse.

Appellee was discharged from the credit union in January of 1982 after a six-year employment tenure. During most of appellee's term of employment, he was given generally favorable evaluations for his performance as a manager. However, beginning in 1978, appellee's evaluation reports in the categories of supervision and personnel management ranged from "below desired levels" to very disappointing. One particular problem was appellee's relationship with those employees under his supervision. The board of directors discussed this problem with appellee on one occasion, yet it remained a constant issue with members of the board. Eventually the board called a special meeting at

which time the directors voted unanimously to dismiss appellee.

On January 4, 1982, after appellee had returned from vacation and less than one month after the special board meeting, the board president gave appellee notice in the form of a letter from the board that his services were no longer needed by the credit union and that appellee's employment was to be terminated effective immediately with appellee receiving ninety days termination pay. No reason was given for the termination.

■ Historically, Pennsylvania has recognized an employer's unfettered right to discharge an at-will employee for any or no reason in the absence of a contractual or statutory prohibition. *Henry v. Pittsburgh and Lake Erie Railroad Company*, 139 Pa. 289, 21 A. 157 (1891). That right has been tempered with the emergence of the common law doctrine of wrongful dismissal whereby an employee may premise a cause of action on either tort or contract principles. H. Perritt, *Employee Dismissal Law and Practice* (1984). Appellee in the instant case only raised the assertion at trial that he was discharged in an abusive manner; he was clearly an at-will employee and there was no contention that a contract, implied or actual, existed between appellee and the credit union. *Cf., Richardson v. Charles Cole Memorial Hospital*, 320 Pa.Super. 106, 466 A.2d 1084 (1984); *Njoku v. University of Pittsburgh, et al.*, 131 P.L.J. 137 (1983). Accordingly, the only issue before this Court is whether appellee's discharge falls within the limited exception that has emerged in this State allowing recovery for a termination of employment that has violated a significant and recognized public policy. *Novosel v. Nationwide Insurance Company*, 721 F.2d 894 (3rd Cir.1983). We find that it does not.

Courts have often grappled with the difficult task of determining which activities should be protected in furtherance of public policy. Murg. Scharman, *Employment at will: Do the Exceptions Overwhelm the Rule?*, 23 B.C.L. Rev. 329 (1982). Some courts look to legislation including

administrative rules, regulations and decisions, and also to judicial decisions, in determining whether an employee's activity is protected by a significant public policy. *Pierce v. Ortho Pharmaceutical Corporation*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980). Many other courts have refused to recognize the tort of wrongful discharge absent a legislative enactment protecting the activity of the employed. This Court has found that the precise extent to which public policy limits an employer's free reign over his business can only be determined on a case by case basis. *Yaindl v. Ingersoll Rand Company*, 281 Pa.Super. 560, 572, 422 A.2d 611, 617 (1980).

The leading Pennsylvania case on termination of at will employees is *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Our Supreme Court held that where no clear mandate of public policy is violated by a termination, an employee has no right of action against his employer. The court made clear that an essential element in permitting a cause of action for wrongful discharge was a finding of a clearly defined mandate of public policy. *Id.* 456 Pa. at 185, 319 A.2d at 180. In *Geary*, the Court found there was no wrongful discharge because the employer did not discharge the employee with the specific intent either to harm him or to coerce him to break any law or otherwise compromise himself. *Id.* In a case following *Geary*, this Court upheld a wrongful discharge cause of action because it clearly violates public policy to discharge an employee whose absence from work is due to his serving jury duty. *Reuther v. Fowler and Williams, Inc.*, 255 Pa.Super. 28, 31, 386 A.2d 119, 120 (1978). However, in *Yaindl, supra,* we expressly denied relief to an employee who had alleged wrongful discharge as a result of a termination which he asserted was personally motivated. *Yaindl, supra.* Outcomes similar to *Yaindl* have appeared in two federal district court cases applying Pennsylvania law. *Boresen v. Rohmand Haas, Inc.*, 526 F.Supp. 1230 (E.D.Pa.1981) and *Adams v. Buddco*, 583 F.Supp. 711 (E.D.Pa.1984).

In *Boresen* the court held that arguably unfair conduct on the part of an employer when terminating an employee was insufficient to give rise to a cause of action for wrongful discharge. In *Adams* it was held that Pennsylvania's narrow public policy exception to the employment at will rule did not apply where an employee was terminated after reporting defects in the company's products to his superiors.

The trial court in the instant case acted properly in finding the case by case approach applicable. Nonetheless, its implicit conclusion that this case fell within the "at-will public policy exception" was incorrect. It is clear that *Geary, Yaindl, Boresen,* and *Adams* demonstrate a pattern of favoring the employer's interest in running its business. However, in Yaindl we did recognize that when determining whether or not an employee has a cause of action for wrongful discharge, "we must weigh several factors, balancing against an employees interest in making a living, his employers interest in running his business, the motivation for discharging an employee, the manner of effecting the discharge, and any social interests or public policies that may be implicated in the discharge." *Yaindl, supra,* 281 Pa.Super. at 577, 422 A.2d at 620.

Nonetheless, to overcome the employer's interest in running a business, the employee must show a violation of a clearly mandated public policy which "strikes at the heart of a citizen's social right, duties, and responsibilities." *Novosel, supra* at 899. In the instant case, the employee was terminated after an employment tenure of six years. Relations with those who were under his supervision deteriorated significantly during that time. This is important, for our analysis must extend beyond a mere inquiry into whether appellee competently performed his duties. As the Court in *Geary* recognized, "The problem extends beyond the question of individual competence, for even an unusually gifted person may be of no use to his employer if he cannot work effectively with his fellow employees." *Geary, supra,* 456 Pa. at 182, 391 A.2d at 179. We must

emphasize that the Pennsylvania Supreme Court in *Geary* and this Court in *Yaindl* refused to recognize the exception to the at-will rule when the employees were dismissed because of disputes with management and fellow employees. *Geary, supra; Yaindl, supra.* The link to a clearly mandated public policy is tenuous in the instant case. The trial court itself realized this in holding that, "the case at bar does not clearly fall within either those cases excluded from the exceptions or those presently identified as exceptions." The discharge of appellee does not fall within what has been viewed in this state as a clearly mandated public policy.

Accordingly, we reverse the judgment of the Court of Common Pleas of Franklin County and direct that judgment n.o.v. be entered in favor of appellants.