559 A.2d 566

**Michael I. HINELINE, Appellant,**

v.

**STROUDSBURG ELECTRIC SUPPLY COMPANY, INC., and Stephen F. Sullivan and Sidney Friedman, Appellees.**

Superior Court of Pennsylvania.

Argued April 12, 1989.

Filed May 30, 1989.

538

John B. Dunn, Stroudsburg, for appellant.

Ronald P. Sweeda, Wilkes–Barre, for Stroudsburg, appellee.

Gerald J. Geiger, Stroudsburg, for Sullivan, appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

Appellant, Michael I. Hineline, appeals from an order of the trial court sustaining appellees' demurrers to four counts contained in appellant's complaint. This appeal presents the question of whether an at-will employee has raised a cognizable claim for wrongful discharge when he was discharged for dismantling his employer's allegedly illegal video camera with audio capabilities. We affirm.

From October 1, 1977, to December 17, 1986, appellant was employed by appellee Stroudsburg Electric Supply Company, Inc. (hereinafter "Stroudsburg Electric"). Stroudsburg Electric operated four video cameras with audio capabilities to monitor the activities in its place of business. On December 17, 1986, appellant disconnected the cameras and was subsequently fired as a result by appellee Stephen F. Sullivan (hereinafter "Sullivan"), president of Stroudsburg Electric.

On June 18, 1987, appellant filed suit against appellees. Appellant's complaint consisted of six counts, summarized as follows: (I) wrongful discharge vs. Stroudsburg Electric and Sullivan; (II) intentional interference with contractual relationship by Sullivan; (III) breach of covenant of good faith and fair dealing by Stroudsburg Electric; (IV) punitive damages vs. Stroudsburg Electric and Sullivan; (V) and (VI) breach of fiduciary duty by Stroudsburg Electric and Sidney Friedman as trustees of appellant's pension plan. Preliminary objections in the nature of a demurrer were filed by Sullivan on July 13, 1987. The trial court, on

December 18, 1987, dismissed Counts I, II, and IV and ordered appellant to plead more specifically as to Count III.

Appellant appealed the trial court's decision to this Court on December 29, 1987. Following argument on June 9, 1988, this Court, on September 7, 1988, entered an order quashing the appeal as interlocutory on the ground that because the trial court permitted appellant to amend Count III of his complaint, his cause of action for breach of contract remained intact and, therefore, appellant was not out of court. "Thus, it is apparent that the order dismissing appellant's causes of action for wrongful discharge and intentional interference with contractual relation is interlocutory and, therefore, not appealable as of right." *Hineline v. Stroudsburg Electric Supply Co.,* No. 42 Philadelphia 1988 (filed September 7, 1988), memorandum at 4, 383 Pa.Super. 671, 550 A.2d 254 (table).

■ On October 7, 1988, appellant filed a praecipe to withdraw the breach of contract count of the complaint with prejudice. On November 2, 1988, appellant filed another notice of appeal.[1]

Appellant raises one issue for our review: "Whether an at-will employee has stated a legally cognizable claim for wrongful discharge where it is claimed that the termination was due to the employee's disconnection of the employer's allegedly illegal electronic surveillance system?" Appellant's brief at 3. When reviewing an order granting preliminary objections in the nature of a demurrer, our standard of review is as follows:

1. We find that appellant's appeal is no longer interlocutory. "When an Order so restricts the pleader as to virtually put him out of court on the cause of action he seeks to litigate, it is a final appealable Order." *Barr v. General Accident Group Ins. Co.,* 360 Pa.Super. 334, 344, 520 A.2d 485, 490 (1987). With the withdrawal of appellant's breach of contract cause of action, the only remaining cause of action is his claim of breach of fiduciary duty by appellees regarding his pension fund. We find this cause of action to be separate and distinct from the wrongful discharge and intentional interference with contractual relation causes of action. Therefore, the order dismissing the latter causes of action is appealable. *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983).

All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true [for the purpose of this review]. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Woodward v. Dietrich,* 378 Pa.Super. 111, 116, 548 A.2d 301, 303 (1988), *quoting Vattimo v. Lower Bucks Hosp., Inc.,* 502 Pa. 241, 244, 465 A.2d 1231, 1232–1233 (1983).

Appellant avers that "his firing was a violation of public policy and conduct which gives cause to a claim for wrongful discharge" because he was an at-will employee fired for disengaging illegally employed surveillance equipment. Appellant's brief at 8. In resolving this matter, we will adhere to the following guidelines:

Historically, Pennsylvania has recognized an employer's unfettered right to discharge an at-will employee for any or no reason in the absence of a contractual or statutory prohibition. *Henry v. Pittsburgh and Lake Erie Railroad Company,* 139 Pa. 289, 21 A. 157 (1891). That right has been tempered with the emergence of the common law doctrine of wrongful dismissal whereby an employee may premise a cause of action on either tort or contract principles. H. Perritt, *Employee Dismissal Law and Practice* (1984).... [Because appellant was clearly an at-will employee], the only issue before this Court is whether appellee's discharge falls within the limited exception that has emerged in this State allowing recovery for a termination of employment that has violated a significant and recognized public policy. *Novosel v. Nationwide Insurance Company,* 721 F.2d 894 (3rd Cir. 1983).

*Turner v. Letterkenny Federal Credit Union,* 351 Pa.Super. 51, 53, 505 A.2d 259, 260 (1985).

The extent to which public policy limits an employer's control over his business must be determined on a case by

case basis. *Id., citing Yaindl v. Ingersoll Rand Company,* 281 Pa.Super. 560, 572, 422 A.2d 611, 617 (1980). An essential element in permitting a cause of action for wrongful discharge is a finding of a violation of a clearly defined mandate of public policy which "strikes at the heart of a citizen's social right, duties, and responsibilities." *Turner, supra,* 351 Pa.Super., at 55, 505 A.2d at 261, *quoting Novosel, supra,* at 899. The public policy exception is a narrow one. *Marsh v. Boyle,* 366 Pa.Super. 1, 7–9, 530 A.2d 491, 495 (1987), *citing Householder v. Kensington Mfg. Co.,* 360 Pa.Super. 290, 520 A.2d 461, 464 (1987). In fact, this Court has recognized a public policy exception in only two published cases since the exception was first recognized in *Geary v. United States,* 456 Pa. 171, 319 A.2d 174 (1974):

> In *Hunter v. Port Authority,* 277 Pa.Super. 4, 419 A.2d 631 (1980), we held that an employee convicted of assault and pardoned by the governor had made out a cause of action in wrongful discharge although he was an at-will employee. This court held that there was an established public policy against stigmatizing former offenders. *Id.* at 11, 419 A.2d 635. In *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978), we again found that the employee had made out a cause of action in wrongful discharge. In that case, the employee was discharged either because he failed to inform his employer that he would be absent due to jury duty, or because he had jury duty. We held that under the second theory, damages would be recoverable because of the strong public policy of promoting the responsibility of performing jury duty. *Id.* at 33–34, 386 A.2d at 121.

*Paul v. Lankenau Hospital,* 375 Pa.Super. 1, 14–15, 543 A.2d 1148, 1155 (1988).

By comparison, this Court has refused to find that a public policy violation exists where an employee was discharged after complaining about the financially wasteful manner in which his department was run, *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985); where an employee was discharged for actively

seeking a position with a competitor, *McCartney v. Meadowview Manor, Inc.,* 353 Pa.Super. 34, 36–37, 508 A.2d 1254, 1255 (1986); where relations with those under the employee's supervision had deteriorated irretrievably, *Turner, supra;* where an employee was discharged even though he had done the job well, *Betts v. Stroehmann Bros.,* 355 Pa.Super. 195, 512 A.2d 1280 (1986); where false accusations of criminal behavior led to discharge, *Gillespie v. St. Joseph's Univ.,* 355 Pa.Super. 362, 513 A.2d 471 (1986); where an employee claimed that every person had a right to earn a living in a job that he chooses, *Marsh, supra;* where a college president was discharged for insisting on a publicly conducted investigation of illegal activities of member of the Board and a dean of the College, *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298 (1988).

■ Instantly, appellant asserts that appellees violated public policy by dismissing him for disengaging allegedly [2] illegal surveillance equipment. The record reflects, however, that appellant had no authority nor statutory right to disengage the surveillance system installed by his employer. While we acknowledge that there is potential for abuse of an employer's power of dismissal where an employee must exercise independent judgment in matters of employee relations, appellant was not that sort of employee. *See e.g., Geary, supra,* 456 Pa. at 180, 319 A.2d at 178. Therefore, appellant is arguing, in essence: (1) that his conduct should be be protected because his intentions were good, *Id.,* 456 Pa. at 180, 319 A.2d at 179; and (2) that he was attempting

---

**2.** Specifically, appellant asserts that appellees were violating 18 Pa.C.S.A. § 5703(1) by the "secretive taping of a customer's or an employee's conversation in a retail establishment...." Appellant's brief at 14. Appellant, however, has offered no interpretive case law to support his contention that the actions of appellees fit within the meaning of the statute. In any event, in light of the discussion *infra,* we need not reach this question.

We note that this issue appears to be a novel one in this Commonwealth. We find, however, that whether or not the Wiretap Act applies to situations such as the instant one is a matter properly left to the appropriate authority to decide in an appropriate situation.

to prevent an illegal act by his employer. *Rinehimer, supra,* 372 Pa.Super. at 490–91, 539 A.2d at 1303.

We find, however, no violation of a clearly defined mandate of public policy that "strikes at the heart" of appellant's social right, duties or responsibilities. In fact, there is strong public policy against self-help or taking the law into one's own hands. As our Supreme Court declared in *Commonwealth v. Sleighter,* 495 Pa. 262, 265–67, 433 A.2d 469, 471 (1981):

> [i]n these days when crime is rampant and disobedience and defiance of Law and Order are so widespread, it would be folly to permit a person who has an adequate remedy at law to take the law into his own hands.... No matter how worthy ... any person's objective may be, Law and Order must be preserved.

*Id., quoting Commonwealth v. English,* 446 Pa. 161, 279 A.2d 4 (1971). *See, e.g., Jones v. City of Pittsburgh, Department of Fire,* 505 Pa. 25, 476 A.2d 895 (1984) (Possible need of self-defense did not justify conduct of taking law into own hands simply because individual wished to right what he "apparently considered a grievous personal wrong."); *Fatemi v. Fatemi,* 371 Pa.Super. 101, 119, 537 A.2d 840, 849 (1988) (Tamilia, J., concurring) (to experience benefits of our society, husband in a custody action must repudiate self-help approach and accede to reasonable and acceptable standards of conduct).

In the instant case, appellant has offered no excuse for failing to follow proper concepts of law and order, such as contacting law enforcement authorities or filing a private complaint,[3] to curtail his employer's alleged criminal behavior. Moreover, the circumstances do not suggest that appellant's life was in jeopardy or that appellant was preventing a violent felony from taking place such that his failure to seek remedy at law would be excused. *Commonwealth v. Harris,* 444 Pa. 515, 281 A.2d 879 (1971). We, therefore,

---

**3.** Pa.R.Crim.P. 133 provides that a person who is not a police officer may file misdemeanor charges against another subject to the approval of the appropriate district attorney. *See also Commonwealth v. Eisemann,* 308 Pa.Super. 16, 453 A.2d 1045 (1982).

find no compelling public policy that justifies appellant's behavior and would support appellant's action for wrongful discharge.

Accordingly, we affirm the order of the trial court dismissing Counts I, II, and IV of appellant's complaint.[4]

**4.** Appellant did not specifically address the dismissal of counts II and IV on appeal because he determined that "[i]f the Lower Court was incorrect in it's ruling on discharging Count I, the wrongful discharge claim, then it was also wrong with respect to the punitive damages claim and the claim for intentional interference with contractual relations as well as the claimed element of damages of loss of career standing and and reputation and emotional distress contained within the wrongful discharge count." Appellant's brief at 12. Further, appellant concluded that "[t]hose Counts which have been dismissed are either dependent upon or flow from the first and most significant Count, that being a Count for wrongful discharge." Appellant's brief at 8. Because appellant has not raised the dismissal of Counts II and IV before this Court, we will not address at length the dismissal of these counts. Pa.R.A.P. 2116(a) ("... [N]o point will be considered which is not set forth in the statement of questions involved or suggested thereby.").