## Marlin v. Borg-Warner Corp.

*Robert D. Kodak,* for plaintiffs.
*Hudnall A. Pfeiffer,* for defendant.
*Rees Griffiths,* for defendant.

CASSIMATIS, *J.,* August 14, 1991—This matter is before the court pursuant to the motion for summary judgment of defendants, Borg-Warner Corporation, Alan D. Flick and James Farrar, pursuant to Pennsylvania Rule of Civil Procedure, Rule 1035.[1] It is plaintiff's claim that he was wrongfully discharged from his employment for complaining within the company about alleged illegal practices of defendant, Borg-Warner Corporation. The parties have submitted evidentiary materials, including depositions and affidavits of parties, which present all facts provable at trial. For the reasons stated below, we must grant summary judgment in favor of defendants on all claims.

The relevant facts are as follows: Mr. Marlin was employed by Borg-Warner Corporation as a truck driver at its facility in Etters, Pennsylvania for approximately 16 years. Mr. Marlin did not have any contract of employment with Borg-Warner Corporation or any agreement that he would be em-

---

1. The pertinent parts of Pennsylvania Rule of Civil Procedure, Rule 1035, read as follows:

"(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

"(b) The adverse party, prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issues of liability alone although there is a genuine issue as to the amount of damages."

ployed for any particular length of time. During his years of employment at Borg-Warner Corporation, Mr. Marlin had disputes with many of his supervisors, most recently with his immediate supervisor, Alan D. Flick, and Mr. Flick's predecessor, David Seibert.

In February 1986, Mr. Marlin suffered a non-work-related back injury and sought treatment for the injury from a chiropractor. Due to his back injury, Mr. Marlin was off work for several weeks. During that time, Alan D. Flick, who was Mr. Marlin's direct supervisor, called him to find out his progress and when he would be returning to work. After weeks of uncertainty about when Mr. Marlin would be able to return to work. Mr. Flick asked Mr. Marlin to be examined by an orthopedic surgeon, Dr. Yucha, at the company's expense. Dr. Yucha examined Mr. Marlin on April 16, 1986, and issued a written report stating, among other things, as follows:

"I have given him detailed instructions in good back mechanics and lumbosacral exercises to perform to help increase the strength in the low back. I feel if he does these exercises faithfully that he should be able to resume his duties as a 'local driver' in five days. He should pay attention to detail with good back mechanics and avoid any heavy lifting, repeated lifting, bending, twisting, standing or sitting for long periods of time. I feel through common sense and paying attention to detail that he should be able to perform his duties although with a track record of intermittent problems over the past 16 years, he might have an occasional flare-up of his low back problem." Dr. Yucha's report.

On the second day of the five-day period, Mr. Flick telephoned Mr. Marlin to give him a dispatch that would begin when the five-day period ended.

Mr. Marlin refused to accept the assignment, claiming that he still was on the sick list. Because of the doctor's statement that Mr. Marlin would be able to return to work on the date the assignment was to begin, Mr. Flick viewed plaintiff's conduct as a refusal to work and as tantamount to a resignation. Accordingly, on April 25, 1986, Mr. Flick sent plaintiff a letter acknowledging the termination of plaintiff's employment.

In July 1987, the Etters terminal at which plaintiff was employed was closed. All Borg-Warner employees at that facility, including all truck drivers, were terminated.

The crucial question in every motion for summary judgment is whether there is genuine issue as to any material fact. On this crucial issue, the moving party has the burden of convincing the court that there is no genuine issue of fact and all doubts on this question are to be resolved against the granting of the motion. *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989).

"A motion for summary judgment may properly be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Pa.R.C.P. 1035(b). See also: *Craddock v. Gross,* 350 Pa. Super. 575, 577-78, 504 A.2d 1300, 1301 (1986); *Berardi v. Johns-Manville Corp.,* 334 Pa. Super. 36, 38, 482 A.2d 1067, 1068-69 (1984); *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 140, 476 A.2d 928, 930 (1984). When a motion for summary judgment is made and supported as provided in Rule 1035, the non-moving party may not rest upon the mere allegations and denials of his pleadings. To avoid summary judgment, the non-

moving party must set forth specific facts by way of affidavit, or as otherwise provided in Rule 1035, demonstrating that a genuine factual issue exists. *Phaff v. Gerner,* 451 Pa. 146, 149, 303 A.2d 826, 829 (1973); *Ressler v. Jones Motor Co. Inc.,* 337 Pa. Super. 602, 609, 487 A.2d, 424, 428 (1985). The inquiry in deciding a motion for summary judgment 'is whether the admissible evidence in the record, in whatever form, from whatever source, considered in the light most favorable to the respondent to the motion, fails to establish a prima facie case. . .' *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238 (3d Cir. 1983), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1985). Summary judgment serves to eliminate the waste of time and resources of both litigants and the courts in cases where a trial would be a useless formality." *Curran v. Children's Services Center of Wyoming County Inc.,* 396 Pa. Super. 29, 578 A.2d 8 (1990).

## COUNT ONE

### Wrongful Discharge

Plaintiff claims that his termination on April 30, 1986 was in retaliation for his refusal to violate both state and federal laws in regard to his driving duties (i.e. driving with loads over the legal limit in weights, driving in excess of the hours permitted by government regulation) and for his outspokenness against such company practices, which constitutes a wrongful discharge in contravention of the public policy of the Commonwealth of Pennsylvania. The question then becomes whether or not the claim is a recognizable cause of action in the Commonwealth of Pennsylvania under the current law.

"The extent to which public policy limits an employer's control over his business must be deter-

mined on a case-by-case basis. *Id.* [*Turner v. Letterkenny Federal Credit Union,* 351 Pa. Super. 51, 505 A.2d 259 (1985)], citing *Yaindl v. Ingersoll-Rand Company,* 281 Pa. Super. 560, 572, 422 A.2d 611, 617 (1980). An essential element in permitting a cause of action for wrongful discharge is a finding of a violation of a clearly defined mandate of public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.' *Turner, supra,* 351 Pa. Super. at 55, 505 A.2d at 261, quoting *Novosel [v. Nationwide Insurance Company,* 721 F.2d 894 (3d Cir. 1983)], *supra,* at 899. The public policy exception is a narrow one. *Marsh v. Boyle,* 366 Pa. Super. 1, 7-9, 530 A.2d 491, 495 (1985), citing *Householder v. Kensington Mfg. Co.,* 360 Pa. Super. 290, 520 A.2d 461, 464 (1987)." *Hineline v. Stroudsburg Electric Supply Company·Inc.,* 384 Pa. Super. 537, 559 A.2d 566 (1989).

The first case in which the Supreme Court wrestled with the concept of establishing non-statutory causes of action for wrongful discharge was *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). In *Geary,* plaintiff, who had been employed as a salesman by his employer for 14 years, called to the attention of his supervisors that a product manufactured by his employer and which plaintiff was required to sell was defective and dangerous. Plaintiff persisted in expressing his reservations regarding the product, finally taking the matter to a vice-president, as a result of which the product was withdrawn from the market and thereafter plaintiff was summarily discharged without notice. The court dismissed the plaintiff's complaint for the termination of employment for failure to assert a legal cause of action.

"No court in this Commonwealth has ever recognized a non-statutory cause of action for an em-

ployee's termination of an at-will employment relationship. . . . Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." 456 Pa. at 174-75, 319 A.2d at 175-76.

"The conduct recognized as tortious in cases of this sort necessarily involves an element of specific intent to cause harm or accomplish an ulterior purpose . . . By the same token, the novel theory of recovery which appellant advances must surely involve specific intent on the part of the company to harm Geary or achieve some other proscribed goal. If a general intent, in the sense that an employer knew or should have known the probable consequences of his act, were all that a disgruntled employee need show in order to make out a cause of action, the privilege of discharge would be effectively eradicated, for some degree of harm is normally foreseeable whenever an employee is dismissed. . . . The difficulty is that the averments of Geary's complaint do not add up to specific intent." 456 Pa. at 177-79, 319 A.2d at 177.

"Appellant's final argument is an appeal to considerations of public policy. Geary asserts in his complaint that he was acting in the best interest of the general public as well as of his employer in opposing the marketing of a product which he believed to be defective. . . . We doubt that establishing a right to litigate every such case as it arises would operate either in the best interest of the parties or of the public. Given the rapidity of change in corporate personnel in the areas of employment not covered by labor agreements, suits like the one at bar could well be expected to place a heavy burden on our judicial system in terms of both an increased case load and the thorny problems of

proof which would inevitably be presented. . . . Of greater concern is the possible impact of such suits on the legitimate interests of employers in hiring and retaining the best personnel available. The ever-present threat of suit might well inhibit the making of critical judgments by employers concerning employee qualifications." 456 Pa. at 181-82, 319 A.2d at 178-79.

"We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." 456 Pa. at 184-85, 319 A.2d at 180.

"*Geary* continues to shine brightly as a polestar for the rule that where there exists 'a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at-will has no right of action against his employer for wrongful discharge.'" *Burkholder v. Hutchison,* 403 Pa. Super. 498, 589 A.2d 721 (1991).

Therefore, under *Geary,* one of two circumstances have to be met. The discharge must be made with the specific intent to harm, or it must be contrary to public policy, with the post-*Geary* development of the law focusing on discharges violative of public policy. *Tourville v. Inter-Ocean Insurance Company,* 353 Pa. 53, 508 A.2d 1263 (1986). See also, *Jenkins v. United Steel Workers of America,* 522 F. Supp. 80 (1981); *Phillips v. Babcock & Wilcox,* 349 Pa. Super. 351, 503 A.2d 36 (1986), where the court stated: "Thus, since *Geary* at-will employees have been afforded the opportunity to prove in-court claims for arbitrary and retaliatory discharge in certain instances. . . ."

Plaintiff, in the case at bar, states a public policy wrongful discharge claim in his complaint, alleging that "plaintiff's firing was actually based upon his refusal to toe the company line and follow company policy and drive loads over the legal limit of weight and drive in excess of the hours permitted by government regulation," and "plaintiff's refusal to violate both state and federal laws in regard to his driving duties, and that further, plaintiff would speak out against such company practices." Plaintiff claims that he was terminated for complaining about many different aspects of defendant's operations, some of which allegedly involved violation of certain DOT regulations, which plaintiff believes is a public policy exception to the at-will rule. Defendant argues that plaintiff was an at-will employee whose employment ended when he refused to accept a work assignment and even if the plaintiff could show that his employment was terminated for reasons other than his refusal to take a dispatch, his claims would still fail.

"In making our determination to uphold the trial court's action, we begin with the understanding that in Pennsylvania an at-will employment environment is the norm, absent a contract to the contrary, and, thus, an employee can be terminated for good reason, bad reason, or no reason at all. *Henry v. Pittsburgh & Lake Erie Railroad Co.,* 139 Pa. 289, 21 A. 157 (1891). Stated otherwise, there is no common-law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). 'Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.' *Clay v. Advanced Computer Applications,* 522 Pa. 86, 89, 559 A.2d 917, 918 (1989)." *Hershberger v.*

*Jersey Shore Steel Company,* 394 Pa. Super. 363, 575 A.2d 944 (1990).

"Although the court in *Geary, supra* did consider and reject the plaintiff's cause of action for wrongful discharge based on specific intent to harm, the court stated that '[w]e hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.' 456 Pa. at 184-85, 319 A.2d at 180. Although in several cases this court has interpreted *Geary* as recognizing a cause of action under the specific intent to harm theory, see *Mudd v. Hoffman Homes For Youth,* 374 Pa. Super. 522, 543 A.2d 1092, 1096 (1988); *Tourville v. Inter-Ocean Insurance Company,* 353 Pa. Super. 53, 508 A.2d 1263 (1986), *allocatur denied,* 514 Pa. 619, 521 A.2d 933 (1986); *Darlington v. General Electric,* 350 Pa. Super. 183, 504 A.2d 306, 318 (1986), in at least one case, this court has interpreted *Geary* as viewing a discharge motivated by specific intent to harm as an example of when a discharge violates public policy. *Yaindl v. Ingersoll-Rand Company Standard Pump-Aldrich Division,* 281 Pa. Super. 560, 422 A.2d 611 (1980). We note that all of these cases were decided prior to the *Clay* and *Paul* cases, which clearly hold that the only exception to the employment at-will doctrine is where the discharge violates clear mandates of public policy. Thus, to survive a challenge of failure to state a cause of action, the complaint must establish the violation of a public policy." *Yetter v. Ward Trucking Corporation,* 401 Pa. Super. 467, 585 A.2d 1022 (1991).

Defendants cite to the case of *Callahan v. Scott Paper Company,* 541 F. Supp. 550 (E.D. Pa. 1982), in which the plaintiffs allege that they were dis-

charged in retaliation for their objection, exposure of, and efforts to eliminate the illegal price discounts and promotional allowances which defendant extended to certain favored customers. Defendant contends that such conduct is not actionable under Pennsylvania law because, as it interprets the reported decisions, the cause of action for wrongful discharge has been recognized only where the discharge was motivated by the employer's attempt to interfere with a right conferred or obligation imposed on the employee by the state legislature.

"Alternatively, Scott argues that should the court reject its interpretation of Pennsylvania law, plaintiffs' wrongful discharge claims must nevertheless be dismissed because plaintiffs' allegations, in material respect, are indistinguishable from those which the Pennsylvania Supreme Court in *Geary* held insufficient to state a cause of action . . . Unfortunately, the restrictions which the court had in mind were not defined precisely. The court suggested that it might recognize a cause of action for wrongful discharge where the employee was terminated in violation of a 'clear mandate of public policy.' Applying that standard to the facts of the case before it, the court concluded that the public policy considerations raised by the plaintiff's complaint did not override the employer's legitimate interest in maintaining the normal operation of its business." *Callahan* at 561-62.

"Indeed, in a number of cases the alleged public policy violation resulting from the plaintiff-employee's discharge has been found to be insufficient as a matter of law to withstand the defendant's motion for dismissal or summary judgment. Although each case must be decided on its own facts, these cases are nonetheless revealing in that they evidence the great reluctance of the courts to rec-

ognize a right of action in an employee who alleged that he was terminated in contravention of public policy . . . 'The praiseworthiness of *Geary's* motives does not detract from the company's legitimate interest in preserving its normal operational procedures from disruption. In sum, while we agree that employees should be encouraged to express their educated views on the quality of their employer's products, we are not persuaded that creating a new non-statutory cause of action of the sort proposed by appellant is the best way to achieve this result. On balance, whatever public policy imperatives can be discerned here seem to militate against such a course.'" *Callahan* at 562-63. See also, *Bruffett v. Warner Communications Inc.,* 692 F.2d 910 (3d Cir. 1982); *Pierce v. New Process Company,* 580 F. Supp. 1543 (W.D. Pa. 1984); *Holmes v. Schneider Power Corporation,* 628 F. Supp. 937 (W.D. Pa. 1986).

Plaintiff was an employee at-will. He had neither a contract of employment with defendant company, nor an agreement that he would be employed for a particular length of time. (Marlin deposition at 116-17.) Thus, plaintiff's employment could be terminated at any time for any reason or no reason at all. Defendant company believed that it had a very good reason to end the employment relationship with plaintiff—his refusal to accept a work assignment.

Plaintiff, in his brief in opposition, argues that even if the illegal practices of defendant company were not specifically prohibited by the Pennsylvania Department of Transportation regulations, a finder of fact could perceive them as significant violations of public policy. Plaintiff further argues that the case at bar is distinguishable from a number of cases where the courts have refused to find a public policy violation [i.e., *Rossi v. Pennsylvania State Univer-*

*sity,* 340 Pa. Super. 39, 489 A.2d 828 (1985) (employee discharged after complaining of the financially wasteful manner in which the department was run); *Gillespie v. St. Joseph's University,* 355 Pa. Super. 362, 513 A.2d 471 (1986) (false accusations of criminal behavior led to discharge); *Rinehimer v. Luzerne County Community College,* 372 Pa. Super. 480, 539 A.2d 1298 (1988) (college president discharged for insisting on a publicly conducted investigation of illegal activities of a member of the board and a dean of the college)][2] in that the violations of the defendant company affected not only the specific drivers involved, but other members of the public using the roadways.

Defendants assert that an employee's claim that he was terminated for complaining about his employer's unlawful actions do not state a claim of wrongful discharge. In the case of *Holmes v. Schneider Power Corporation,* 628 F. Supp. 937, 940 (W.D. Pa. 1986), which was cited by defendants, an employee alleged that he was terminated for complaining about hazardous conditions at his work site that violated the Occupational Safety and Health Act. The court, applying Pennsylvania law, granted summary judgment in favor of the, employer, holding

---

2. "In addition, this court has refused to find that a public policy violation exists where an employee was discharged for actively seeking a position with a competitor, *McCartney v. Meadowview Manor Inc.,* 353 Pa. Super. 34, 36-37, 508 A.2d 1254, 1255 (1986); where relations with those under the employee's supervision had deteriorated irretrievably, *Turner v. Letterkenny Federal Credit Union,* 351 Pa. Super. 51, 505 A.2d 259 (1985); where an employee was discharged even though he had done the job well, *Betts v. Stroehmann Bros.,* 355 Pa. Super. 195, 512 A.2d 1280 (1986); where an employee claimed that every person had a right to earn a living in a job that he chooses, *Marsh v. Boyle,* 366 Pa. Super. 1, 530 A.2d 491 (1987). . .. " *Yetter v. Ward Trucking Corporation,* 401 Pa. Super. 467, 585 A.2d 1022 (1991).

that Pennsylvania did not recognize a public policy exception to the at-will rule in this context. See also, *Rettinger v. American Can Company,* 574 F. Supp. 306 (M.D. Pa. 1983).

In this case, plaintiff's employment was at-will, which allows the employer to discharge an employee at any time, without cause, unless the discharge was against public policy. The cause of action brought by plaintiff must stand or fall on a violation of public policy, and we find, pursuant to case law cited, that there was no such violation and grant defendant's motion for summary judgment as to this count.

## COUNT TWO

### Breach of Implied Covenant of Good Faith and Fair Dealing

In Count Two of his complaint, plaintiff alleges that the termination of his employment because of the plaintiff's failure to engage in illegal activities, breached an implied covenant of good faith and fair dealing. However, "there is no claim under Pennsylvania law for breach of a duty of good faith and fair dealing where the employment relationship is at-will. *Wolk v. Saks Fifth Avenue Inc.,* 728 F.2d 221, 225 (3d Cir. 1984); *Bruffet,* 692 F.2d at 917. There may be an express or implied covenant of good faith and fair dealing in any contract between the parties, but if so, its breach is a breach of contract rather than an independent breach of a duty of good faith and fair dealing." *Engstrom v. John Nuveen & Company,* 668 F. Supp. 953, 958 (E.D. Pa. 1987).

The facts show that plaintiff here was an at-will employee, and we therefore grant defendant's motion for summary judgment as to this count.

## COUNT THREE

### *Tort of Outrage*

Plaintiff alleges in his complaint that the conduct of defendants was willful, malicious and oppressive and constitutes a fraud upon the public as well as imposing great emotional distress, which constitutes the tort of outrage.

To recover, a plaintiff must show that defendant's actions are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Engstrom v. John Nuveen & Company,* 668 F. Supp. at 959, quoting *Bradshaw v. General Motors Corporation,* 805 F.2d 110 (3d Cir. 1986). "In short, a recitation of the facts would incite an average member of the community to exclaim 'Outrageous.'" *Bradshaw* at 114.

We find no facts showing that the company's alleged conduct was "beyond all possible bounds of decency," or was "atrocious and utterly intolerable in a civilized society," and we therefore grant summary judgment as to Count Three.

Accordingly, defendants' motion for summary judgment is granted on all of plaintiffs' claims and we enter the following

## ORDER

And now, August 14, 1991, it is hereby ordered that the motion for summary judgment of defendants, Borg-Warner, Alan D. Flick and James Farrar, against plaintiff be, and it hereby is, granted and that summary judgment be entered in favor of defendants and against plaintiff.

The prothonotary is directed to provide notice of the entry of this opinion and order as required by law.