Adam FRANKEL, Plaintiff,

v.

The WARWICK HOTEL, et al., Defendants.

No. 94–CV–6427.

United States District Court, E.D. Pennsylvania.

March 31, 1995.

Cornelius C. O'Brien, III, Edward F. Canfield, Canfield & O'Brien, Philadelphia, PA, for plaintiff.

Dona S. Kahn, Hope A. Comisky, Anderson Kill Olick & Oshinsky, P.C., Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This diversity case, involving a dispute between a father and his son, has been brought before the Court by motion of the defendants, who seek dismissal of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, the defendants' motion to dismiss will be granted.

### I. HISTORY OF THE CASE

The issue for the Court is whether Plaintiff has stated a claim on which relief can be granted; thus, we must take as true all of the factual allegations made in the amended complaint. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). Accordingly, the facts giving rise to this lawsuit are as follows. In the fall of 1989, Plaintiff Adam Frankel accepted a job offer from his father, Defendant William Frankel, to work as a restaurant manager at the Warwick Hotel in Philadelphia. Adam Frankel's status was that of an at-will employee. The elder Mr. Frankel is a partner in the Warwick Hotel and an officer of the Frankel Management Company of Philadelphia, Inc. ("Frankel Management"), two related entities that own and operate the Warwick Hotel. Adam Frankel was employed from November 1, 1989 until October 24, 1992. During this time, he received merit pay raises with increases in compensation and benefits. On June 8, 1991, the younger Mr. Frankel married Annika Moriarity, a Roman Catholic. On October 16, 1992, William Frankel because of his antipathy toward Ms. Moriarity and her religion, informed his son that he would be fired unless he divorced his wife. The son refused to leave his wife, and as a result, he was fired on October 24, 1992.

Adam Frankel's amended complaint, filed against the Warwick Hotel, Frankel Management, and William Frankel, contains four counts. In the first two counts, Adam Frankel alleges that he was wrongfully discharged. The third count is brought against William Frankel under an intentional infliction of emotional distress theory. In the fourth count, Adam Frankel alleges that the defendants are liable under the tort theory of invasion of privacy by intentionally interfering with his marriage. In support of their motion, the defendants assert that the amended complaint must be dismissed because the allegations fail to state a claim upon which relief can be granted.

### II. DISCUSSION

#### A. Standards Applicable to a Rule 12(b)(6) Motion

In considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint's allegations must be construed favorably to the pleader. The court must accept as true all of the plaintiff's factual allegations and draw from them all reasonable inferences. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991) (citations omitted). Thus, the court will grant a Rule 12(b)(6) motion only if the non-moving party cannot prevail legally under the set of facts alleged. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). In deciding this motion, this Court will apply these standards to each of the four counts raised in Adam Frankel's amended complaint.

B. *Wrongful Discharge*

■ Under Pennsylvania law, employees may be discharged at any time, for any reason or for no reason at all. *Carlson v. Arnot–Ogden Memorial Hosp.,* 918 F.2d 411, 414 (3d Cir.1990); *Henry v. Pittsburg & Lake Erie R.R. Co.,* 139 Pa. 289, 21 A. 157 (1891). As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Johnson v. Resources for Human Dev.,* 843 F.Supp. 974, 979 (E.D.Pa. 1994). In *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974), however, the Pennsylvania Supreme Court recognized an exception to this rule, where the discharge of an at-will employee would threaten a clearly mandated public policy.

This public policy exception has been interpreted narrowly. *Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1343 (3d Cir.1990), *cert. denied,* 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991); *Hineline v. Stroudsburg Elec. Supply Co.,* 384 Pa.Super. 537, 559 A.2d 566, 568–69, *appeal denied,* 524 Pa. 628, 574 A.2d 70 (1989). Thus, exceptions to this rule have been recognized in only the most limited of circumstances, *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917, 918 (1989), where the court is able to identify a clearly defined mandate of public policy that "strikes at the heart of a citizen's social right, duties, and responsibilities." *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 899 (3d Cir.1983). Generally, the recognized exceptions concern an employee's discharge after he or she refused to violate the law, *see Woodson v. AMF Leisureland Ctrs., Inc.,* 842 F.2d 699 (3d Cir.1988) (dismissal for refusal to serve liquor to intoxicated person); *McNulty v. Borden, Inc.,* 474 F.Supp. 1111 (E.D.Pa.1979) (dismissal for refusal to participate in antitrust violations); *Field v. Philadelphia Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989) (employee fired for making statutorily required report to NRC), or an employee's right of political participation, *see Novosel* (dismissal for refusal to participate in political lobbying); *Reuther v. Fowler & Williams Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee fired for absence due to jury duty), or employer conduct in violation of a specific statute, as in *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir. 1979) (employment terminated for individual's refusal to take polygraph test).

■ These exceptions stand in contrast to cases in which plaintiffs seek an exception based upon a general statement of public policy. As the Pennsylvania Superior Court has held, mere general expressions that a policy exists do not rise to the level of a clearly mandated public policy for which a cause of action for wrongful discharge may be sustained. *McGonagle v. Union Fidelity Corp.,* 383 Pa.Super. 223, 556 A.2d 878 (1989) (plaintiff fired for failure to violate unspecified insurance laws), *appeal denied,* 525 Pa. 584, 575 A.2d 115 (1990). Importantly, the *McGonagle* court noted that "[t]he provisions recited by the plaintiff lack specificity as to what conduct is proscribed." *Id.* 556 A.2d at 885. Accordingly, the court concluded that the provisions relied upon constituted nothing more than a general expression of Pennsylvania public policy, and as such, did not justify permitting a cause of action to go forward. *Id.*

■ Since Adam Frankel concedes that he was an at-will employee, the issue here is whether the case falls within that limited exception allowing recovery for a termination that has violated public policy. The younger Mr. Frankel points to three areas of the law as potential sources of public policy justifying a cause of action, all of which relate to policy favoring family cohesiveness. These sources include the Pennsylvania Divorce Code, 23 Pa.Cons.Stat.Ann. § 3101, *et seq.,* legislative findings supporting the general policy that the family deserves protection and preservation, and the Commonwealth's prevention of testamentary attempts to destroy the family. Adam Frankel's contention that these pronouncements amount to the sort of clearly mandated articulations of public policy which justify the creation of an exception to the at-will doctrine, however, is without merit. Like the provisions relied upon by the *McGonagle* plaintiff, the statements relating to the preservation of the family are too vague to be used as a basis for an exception to the employee-at-will doctrine. Typical of the language relied upon is the policy statement

contained in the Pennsylvania Divorce Code, which notes that "the protection and preservation of the family is of paramount public concern." 23 Pa.Cons.Stat.Ann. § 3102(a). As is apparent, the provision does not specifically prohibit or mandate any particular conduct; it is instead a vague and general expression of the legislature's view concerning the importance of family unity. As such, it is an inappropriate basis for the creation of an exception to the general rule. Thus, we hold that the case arising from the facts alleged is governed by the general rule regarding termination of an at-will employee. As a result, we must grant the defendants' motion to dismiss as it relates to the first two counts of the amended complaint.

### C. Intentional Infliction of Emotional Distress

■ Pennsylvania courts recognize the tort of intentional infliction of emotional distress, but have been cautious in permitting recovery. *Williams v. Guzzardi,* 875 F.2d 46, 52 (3d Cir.1989). Thus, in order for a plaintiff to recover under this theory of liability, the defendant must have acted in a manner "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Salerno v. Philadelphia Newspapers, Inc.,* 377 Pa.Super. 83, 546 A.2d 1168, 1172 (1988) (citations and internal quotations omitted); *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298, 1305 (citations omitted), *appeal denied,* 521 Pa. 606, 555 A.2d 116 (1988).

■ To recover, a plaintiff must establish the following four elements: (1) defendant's conduct must be intentional or reckless, (2) the conduct must be extreme and outrageous, (3) it must cause emotional distress, and (4) the emotional distress must be severe. *Williams,* 875 F.2d at 52. Further, under Pennsylvania law, to state such a claim in a situation where the plaintiff has allegedly suffered emotional distress as a result of outrageous conduct directed at the plaintiff, as is the case here, there must be an allegation of physical injury. *Johnson v. Caparelli,* 425 Pa.Super. 404, 625 A.2d 668, 671

(1993) (citing Restatement (Second) of Torts § 46(1)), *appeal denied,* 538 Pa. 635, 647 A.2d 511 (1994). We further note that such a cause of action rarely lies in the context of the employee-employer relationship. As the Third Circuit has noted, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990).

■ Applying these principles to the instant matter, this Court concludes that the intentional infliction of emotional distress claim must be dismissed. The pertinent conduct is William Frankel's alleged threat to discharge his son unless he divorced his wife. While we do not endorse the elder Mr. Frankel's alleged conduct, we cannot conclude that it was so outrageous as to be "utterly intolerable in a civilized society." Moreover, we note that the younger Mr. Frankel has not alleged that he suffered physical injury, as is required under Pennsylvania law. Accordingly, plaintiff's claim for damages under the theory of intentional infliction of emotional distress must be dismissed.

### D. Invasion of Privacy

■ An invasion of privacy is actionable under Pennsylvania law, *Harris v. Easton Publishing Co.,* 335 Pa.Super. 141, 483 A.2d 1377, 1383 (1984), and consists of four distinct torts, including (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to one's private life, and (4) publicity placing one in a false light. *Id.* Here, Adam Frankel alleges that the defendants are liable under the intrusion upon seclusion tort. Intrusion upon seclusion occurs when a person "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to the reasonable person." *Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611, 620 (3d Cir.1992) (quoting Restatement (Second) of Torts § 652B). Further, a defendant will not be liable unless the invasion

is substantial. *Id.* at 621. The intrusion may be (1) a physical intrusion into a place where the plaintiff has secluded himself or herself, (2) the use of defendant's senses to oversee or overhear plaintiff's private affairs, (3) or some other form of investigation or examination into plaintiff's private concerns. *Id.; Harris,* 483 A.2d at 1383.

■ Turning to the instant matter, we conclude that Adam Frankel has failed to state a cause of action for invasion of privacy. As the cases make clear, this tort encompasses the physical or sensory penetration of a person's zone of seclusion in an attempt to collect private information concerning that person's affairs. The facts alleged here, that William Frankel terminated his son's employment because the son refused to divorce his wife, do not amount to the type of harm compensable under this theory. Further, to the extent that the intrusion alleged by Adam Frankel is an intentional interference with his marriage, we note that the Restatement specifically excludes marriage contracts from the tort of intentional interference with contract. *See* Restatement (Second) of Torts § 766 (1977) ("One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability ...."). Thus, we must conclude that Adam Frankel has failed to state a claim for invasion of privacy in his amended complaint.

### III. *SUMMARY AND CONCLUSION*

For the foregoing reasons, the defendants' motion to dismiss plaintiff's amended complaint is granted.