Mary McLAUGHLIN, Appellant,

v.

**GASTROINTESTINAL SPECIALISTS, INC.**

Superior Court of Pennsylvania.

Argued Feb. 19, 1997.

Filed June 10, 1997.

Reargument Denied Aug. 1, 1997.

Leigh Jerner, Philadelphia, for appellant.

Theodore A. Schwartz and Glenn M. Campbell, Philadelphia, for appellee.

Before CAVANAUGH, BECK and JOHNSON, JJ.

BECK, Judge.

We decide, *inter alia*, whether the appellant-employee stated a claim for wrongful discharge against the appellee-employer. The trial court held that the employee did not state such a claim, sustaining preliminary objections and dismissing the complaint. We reverse in part and affirm in part.

In this appeal from the trial court's order sustaining preliminary objections and dismissing the complaint, our review is plenary. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of review. The question presented is whether, on the facts averred, the law says with certainty that no recovery is

possible; any doubt should be resolved in favor of overruling the preliminary objections. *Lenihan v. Howe,* 449 Pa.Super. 426, 674 A.2d 273 (1996).

Mindful of this standard, we summarize the relevant facts averred in the complaint. Appellant Mary McLaughlin was employed as an office manager for appellee Gastrointestinal Specialists, Inc. ("GSI"). In this capacity, McLaughlin was responsible for the day to day operation of the office and supervision of GSI's employees. As part of its practice, GSI used a chemical called gluteraldehyde. Gluteraldehyde is a toxic, highly noxious solution which, according to the Occupational Safety and Health Administration ("OSHA"), is only to be used in an open, well ventilated area. In GSI's office, the gluteraldehyde was stored in a small closet totally lacking in ventilation, and a strong, noxious odor was emitted and toxic vapors were released whenever the closet door was opened.

Almost immediately upon her employment at GSI, McLaughlin began suffering from migraine headaches, nausea, fatigue, shortness of breath and dizziness. She learned that other employees in the office were suffering from these symptoms. In September 1995, McLaughlin notified GSI's practice manager, Mariko Danzy, of her concerns regarding the use of gluteraldehyde without proper procedures and ventilation. No action was taken. At the end of September, McLaughlin learned of the dangers of gluteraldehyde and obtained a sample to monitor the toxicity level of the room in which the chemical was stored. The sample was sent to a testing laboratory and the analysis result

was that the gluteraldehyde was well in excess of OSHA's maximum exposure limit.[1] In mid-October 1995, after receiving the lab report, McLaughlin again complained to Ms. Danzy, who told McLaughlin to keep quiet, that GSI feared workers' compensation claims, and that a "makeshift construct" would be built. McLaughlin told Ms. Danzy that her information was that a makeshift construct would not suffice.

On October 27, 1995, GSI fired McLaughlin; no reason for the termination was given. GSI told McLaughlin that she would receive her wages for the week ending October 27, 1995, as well as two weeks wages as severance pay. McLaughlin received her "last weeks [sic] wages" in an envelope postmarked November 28, 1995, one week after her counsel sent a letter to GSI regarding these events.

McLaughlin filed the instant action against GSI, claiming that: 1) GSI violated Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1–260.12, when it failed to timely pay her wages; 2) GSI violated Pennsylvania's Whistleblower Law, 43 P.S. §§ 1421–1428, when it fired her;[2] 3) GSI is liable for wrongful discharge because its termination of McLaughlin was contrary to public policy; and 4) GSI is liable for damages arising out of her exposure to gluteraldehyde while employed by GSI.

### Claim for Wages and Severance Pay

We first address McLaughlin's claim on appeal that GSI violated the WPCL when it failed to timely pay her wages and severance pay.[3] Under the WPCL, the term

1. Appellant McLaughlin attached to her complaint a copy of a Nevin Laboratories "Auto-Record Analysis Report" which indicated a concentration of 0.51 ppm. The report stated that the "OSHA maximum exposure limit is 0.2 ppm ... The level measured is above the 0.2 ppm limit. Level can be lowered by a modification in work procedure and by improved ventilation...."

2. Appellant does not pursue this claim on appeal. The lower court properly sustained the demurrer on this count as the protections contained in the Whistleblower Law apply only to employees of a "public body." 43 P.S. § 1422. *Holewinski v. Children's Hosp. of Pitt.,* 437 Pa.Super. 174, 649 A.2d 712 (1994); *Krajsa v. Keypunch, Inc.,* 424 Pa.Super. 230, 622 A.2d 355 (1993).

3. In this appeal, McLaughlin argues that she never received the promised severance pay of an additional two weeks' wages. A close reading of the complaint does not clearly reveal a claim for this additional amount. She alleges that she did receive late payment of her "last weeks [sic] wages." It is not clear whether this means she received one *week's* wages, those owed through October 27, 1995, or the last *weeks'* wages, those owed through October 27, 1995 *plus* two more weeks as severance pay. The trial court evidently resolved the doubt in favor of the plaintiff, and considered McLaughlin's action to include a claim for unpaid severance pay. We must do the same.

"wages" includes fringe benefits or wage supplements such as separation pay to be paid pursuant to an agreement to the employee. 43 P.S. § 260.2a. The act also provides that:

Whenever an employer separates an employe from the payroll, ... the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

43 P.S. § 260.5(a). Where wages remain unpaid for thirty days beyond the regularly scheduled payday, the employee may be entitled to claim, "in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater." 43 P.S. § 260.10. Attorneys' fees may also be collected under the act. § 260.9a(f).

GSI concedes that it "failed to pay these wages within thirty days following appellant's termination and the payable date for these wages." We do not see how the claim under the WCPL could be dismissed under these circumstances, and Count I of McLaughlin's complaint should have been allowed to proceed beyond the preliminary objections stage. We therefore reverse the trial court's holding on this issue and remand for further proceedings on this claim.

### Claim for Wrongful Discharge

■ Next, McLaughlin claims that she stated a cause of action for wrongful discharge, despite her employment by GSI on an at-will basis. She alleges that she was fired for complaining to her employer that she, and other employees in GSI's office, were being exposed to levels of gluteraldehyde in excess of federal regulations. McLaughlin argues that GSI's conduct under these circumstances is actionable.

■ As a general rule, Pennsylvania does not recognize a common law cause of action for termination of an at-will employ-

ment relationship; our courts have instead protected the employer's " 'unfettered right to discharge an at-will employee for any or no reason in the absence of a contractual or statutory prohibition.' " *Field v. Philadelphia Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170, 1179 (1989) (quoting from *Hineline v. Stroudsburg Elec. Supply Co.*, 384 Pa.Super. 537, 559 A.2d 566 (1989)). Nonetheless, an action for wrongful discharge will lie where the employer's conduct in terminating an at-will employee violates a clear mandate of public policy. *Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346 (1990); *Clay v. Advanced Comp. App.*, 522 Pa. 86, 559 A.2d 917 (1989).[4] We have applied this exception in only the most limited cases. *See, e.g., Raykovitz v. K Mart Corp.*, 445 Pa.Super. 378, 665 A.2d 833 (1995) (employee fired for receiving unemployment compensation where statute prohibits waiver of those rights); *Kroen v. Bedway Security Agency, Inc.*, 430 Pa.Super. 83, 633 A.2d 628 (1993) (employee fired for refusal to take lie detector tests which are prohibited by statute); *Field, supra* (safety inspector was terminated for reporting dangers at nuclear reactor as required by statute); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee fired for serving statutorily required jury duty).

■ The at-will employment doctrine recognizes the employer's right to exercise "free reign" over its business and, if necessary, to "rid itself of a troublesome employee" without fear of a wrongful discharge lawsuit. *Turner v. Letterkenny Fed. Cred. Union*, 351 Pa.Super. 51, 505 A.2d 259 (1985); *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 489 A.2d 828 (1985). *See also Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980) (plaintiff was not wrongfully discharged where his claim about dangerous machinery was unsubstantiated, and where he was given good faith review and offered another position he rejected). To fit within the public policy exception, the

---

**4.** The supreme court's decision in *Paul* made it clear that the public policy exception is the only exception to the at-will employment doctrine, in contrast to earlier cases which had discussed a separate cause of action for wrongful discharge

based on a specific intent to harm. *Riggio v. Burns*, Dkt.02997 Phila. 1996. *Cf. Mudd v. Hoffman Homes*, 374 Pa.Super. 522, 543 A.2d 1092 (1988); *Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A. 2d 611 (1980).

employer's conduct must "go to the heart of a citizen's rights, duties, and responsibilities or the discharge is not wrongful." *Booth v. McDonnell Douglas Truck Serv.*, 401 Pa.Super. 234, 585 A.2d 24 (1991). The public policy at issue must be articulated in the constitution, legislation, administrative regulation or judicial decision. *Jacques v. AKZO Int'l Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748 (1993).

An en banc panel of this court most recently stated that the public policy exception applies when: 1) the employer requires the employee to commit a crime; 2) the employer prevents the employee from complying with a statutory duty; or 3) the employer fires the employee in direct contravention of a specific statutory prohibition. *Shick v. Shirey*, 456 Pa.Super. 668, 691 A.2d 511 (1997) (en banc).

In this case, appellant alleges that she was fired for complaining to her employer that she and her co-workers were being exposed to a toxic chemical without adequate protection and ventilation. She claims that GSI's action in terminating her employment under these circumstances fits within the public policy exception to the at-will employment doctrine, and that the trial court erred when it dismissed her claim for wrongful discharge. We disagree.

As we have stated, the public policy exception has been applied in cases where the employee was fired for taking action that was *specifically protected by a statute*, such as filing for unemployment compensation benefits or serving on a jury. *See Raykovitz, supra; Reuther, supra.* We have also allowed an action for wrongful discharge to proceed where a statute has expressly prohibited the termination, *see Kroen v. Bedway, supra*, or where a statute specifically requires the employee to take the action for which he was terminated. *Field, supra.*

There is a statutory provision involved in this case. McLaughlin argues that she is protected by the public policy expressed in the OSHA laws and the regulations promulgated thereunder. Among the purposes in enacting the occupational health and safety law, Congress sought to:

assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources—

(1) by encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards in their places of employment, and to stimulate employers and employees to institute new and to perfect existing programs for providing safe and healthful working conditions;

(2) by providing that employers and employees have separate but dependent responsibilities and rights with respect to achieving safe and healthful working conditions; . . . .

29 U.S.C.A. § 651(b)(1), (2). The act requires employers to furnish a workplace that is "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" and to comply with the standards promulgated under the act. 29 U.S.C.A. § 654(a). The law also provides that:

No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [Occupational Safety and Health] or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

29 U.S.C.A. § 660(c).

Our federal courts have interpreted Pennsylvania law to hold specifically that an action for wrongful discharge will lie where an employee was fired after reporting a health hazard to the federal agency responsible for enforcing OSHA (the United States Department of Labor Occupational Safety and Health Administration) or to the Pennsylvania Department of Agriculture. *Sorge v. Wright's Knitwear Corp.*, 832 F.Supp. 118 (E.D.Pa.1993); *Kilpatrick v. Delaware County Society for the Prevention of Cruelty to Animals*, 632 F.Supp. 542 (E.D.Pa.1986).

The question raised in this case, however, is whether a complaint *to the employer*, rath-

er than to a federal or state agency, is the kind of employee action that will be protected by allowing the employee to pursue damages in a wrongful discharge lawsuit. Such a claim did not succeed in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), for example. Geary, a salesman, was fired after complaining to his employer about the safety of a new product. In denying his claim for relief, the Pennsylvania Supreme Court was not swayed by the fact that Geary's safety concerns were proved correct, and the product was ultimately removed from the market. Instead, the court focused on the fact that Geary had no particular expertise in product safety, and that the manner in which Geary made his complaints harmed "the company's legitimate interest in preserving its normal operating procedures from disruption." 456 Pa. at 183, 319 A.2d at 180. *See also Rossi v. Penna. State Univ., supra* (employee fired for attempting to prevent waste by superiors; no public policy exception applied and employer could rid itself of troublesome employee who improperly attempted to assume management prerogatives); *Hunger v. Grand Central Sanitation,* 447 Pa.Super. 575, 670 A.2d 173 (1996) (safety director of trash disposal company fired for reporting to police and FBI that company's customer was allegedly dumping blasting caps).

In this case, appellant McLaughlin took it upon herself to test the gluteraldehyde levels in the office, and when she was told that her employer would take action to remedy the problem, appellant stated that the proposed remedial measures would not suffice. Although the OSHA statute expressly protects from termination the employee who files a complaint with OSHA and thereby initiates proceedings "under or related to" the statute, we hold that the public policy expressed therein does not go so far as to protect the employee who disrupts the orderly management of her employer's business by merely complaining within the workplace. *Geary, supra.* McLaughlin's actions do not fall within the strictly circumscribed categories that embody the public policy exception to the at-will employment doctrine. GSI did not require her to commit a crime, or prevent her from complying with a statutorily imposed duty, and GSI was not specifically precluded by statute from firing her. *Shick v. Shirey, supra.* This case is thus distinguishable from the few cases in which we have allowed the wrongful discharge claim to proceed. GSI's termination of McLaughlin's employment under these circumstances did not "strike at the heart of [her] rights, duties and responsibilities" and is therefore not actionable. *Booth v. McDonnell Douglas, supra.* We therefore affirm that portion of the lower court's order dismissing Count III of the complaint.

### Claim for Punitive Damages

■ McLaughlin finally argues that the lower court should not have dismissed her claim for damages arising out of her exposure to gluteraldehyde while employed by GSI.[5] McLaughlin argues that GSI's refusal to properly deal with the chemical in the office constituted willful, wanton and outrageous conduct that entitles her to punitive damages, and removes her claim from the exclusivity provisions of the Workers' Compensation Act, 77 P.S. § 481. Section 481 provides that the "liability of an employer under this act shall be exclusive and in place of *any and all* other liability to [employees] otherwise entitled to damages in any action at law or otherwise on account of any injury or death" (emphasis added). Our cases are clear that there is no exception from this exclusivity provision, even for intentional employer conduct. *Poyser v. Newman & Co.,* 514 Pa. 32, 522 A.2d 548 (1987); *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983). There is no question that the injuries alleged here arose out of McLaughlin's performance of her duties while employed by GSI, and are therefore covered by the act.[6] We therefore affirm the court's

---

5. Appellant alleged that she suffered and continues to suffer from shortness of breath, dizziness, nausea, fatigue, migraine headaches, sinus problems and other ailments as a result of her exposure to gluteraldehyde.

6. Of course, McLaughlin's claim for damages for wrongful discharge and under the WCPL are not precluded by the Workers' Compensation Act. *See Burns v. United Parcel Service, Inc.,* 757 F.Supp. 518 (E.D.Pa.1991) (exclusivity provi-

holding that the Workers' Compensation Act provides the exclusive remedy for the injuries appellant describes in Count IV of her complaint and, as a result, we affirm its dismissal of the tort claims set forth in that count.

Order affirmed in part and reversed in part; remanded for further proceedings on count I (WPCL claim) only. Jurisdiction relinquished.

sions did not apply to injuries that allegedly arose out of retaliatory discharge rather than

duties while employed by defendant).