Carol A. **DIBERARDINIS–MASON**
and **Roy R. Mason, h/w**

v.

**SUPER FRESH, also t/a The Great Atlantic & Pacific Tea Co., Inc.**

No. CIV. A. 99–3410.

United States District Court,
E.D. Pennsylvania.

April 14, 2000.

Faye Riva Cohen, Cohen and Cohen Associates, Philadelphia, PA, for plaintiffs.

Linda M. Barone, Sara A. Begley, Reed, Smith, Shaw & McClay, Philadelphia, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

We must here interpret a narrow exception to Pennsylvania's strong commitment to the employment-at-will doctrine. For the reasons that follow, we hold that the exception does not apply and will enter summary judgment in favor of defendant Super Fresh.

*Facts*

This action, for wrongful termination in violation of public policy and loss of consortium,[1] arises out of Super Fresh's July 3, 1997 decision to fire plaintiff Carol A. Diberardinis–Mason ("Mason"). The facts are largely undisputed.

Super Fresh hired Mason as a pharmacist on February 24, 1997, after she completed a standard Super Fresh application for employment. *See* Def.'s Mot. Ex. 3. Hank DeGeorge, Super Fresh's Director of Pharmacy, interviewed Mason for the job.

On the application, Mason stated that her "present" employer was "Acme Markets, Inc." and that she was leaving Acme because it offered "no chance for advancement." *Id.* In reality, however, Acme had suspended and then fired Mason.[2] *See id.*

---

1. In addition to the above, Mason and her husband originally asserted claims for wrongful discharge with intent to cause harm, intentional and negligent infliction of emotional distress, and assault. On October 26, 1999, we granted Super Fresh's motion to dismiss these claims. *See* Oct. 29, 1999 Order.

2. Mason testified that Acme suspended her because of a problem with the pharmacy's inventory of a weight-loss drug, Apidex. *See* Def.'s Br. Ex. 1, at 217; *see also* Pls.' Br. at [2] ("The alleged reason for Mason's suspension ... was the shortage of various controlled substances in the pharmacy she managed, with the largest shortage occurring of the medication Apidex").

After Acme fired her, Mason filed a complaint in this District alleging sex discrimina-

Ex. 1, at 219; Ex. 5 ¶ 10; Ex. 1, at 46; *see also* Pls.' Br. at [2] (Mason's "termination from Acme occurred on January 2, 1997"). Thus, her statements on the Super Fresh application were untrue.

After hiring Mason, Super Fresh provided her with job training and assigned her to its store in the Somerton section of Philadelphia. Various employees have testified that Super Fresh had serious problems with Mason's job performance almost immediately. *See, e.g.,* Def.'s Ex. 2, at 34–45. DeGeorge met with Mason on several occasions about these deficiencies. *See* Def.'s Br. Ex. 2, at 47–49; Ex. 11 ¶ 7.[3]

On May 15, 1997, Super Fresh transferred Mason to its new store on Cottman Avenue. DeGeorge testified that he began receiving complaints about Mason within a week of the store's opening. *Id.* Ex. 2, at 61. Also, while working at the Cottman store, Mason mistakenly gave the wrong prescription to a customer. *See id.* Ex. 15.

On July 3, 1997, DeGeorge called a meeting with Mason and several other Super Fresh employees to address Mason's performance problems and some drugs (specifically, phenteramine tablets, which are the generic form of Apidex) that were missing from the pharmacy. During the meeting, Mason became upset and asked DeGeorge if anyone at Super Fresh had found out about her problems with Acme. She left the meeting to call her husband and shortly thereafter received a call from her attorney. At that point, the meeting ended and Super Fresh fired her.

Mason thereafter filed this action. Super Fresh has moved for summary judgment,[4] arguing that (a) Mason cannot identify a recognized public policy that her discharge violated, and (b) it had a legitimate independent basis for firing her.

*Discussion*

In general, Pennsylvania[5] does not recognize a common-law cause of action for the termination of at-will employment.[6] *See, e.g., Paul v. Lankenau Hosp.,* 524 Pa. 90, 569 A.2d 346, 348 (1990); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). An at-will employee may be fired for good reason, bad reason, or no reason at all. *Krajsa v. Keypunch, Inc.,* 424 Pa.Super. 230, 622 A.2d 355, 358 (1993). "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917, 918 (1989). Pennsylvania first

---

tion and various common law claims, *see Mason v. Acme,* Civ. A. No. 97–5693; Defs.' Br. Ex. 5. The parties settled that matter before trial.

**3.** Mason disputes these allegations and claims that there was no problem with her performance. Because our decision does not involve the resolution of this factual dispute, it will not preclude a grant of summary judgment in Super Fresh's favor.

**4.** Under Fed.R.Civ.P. 56(c), a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of proving that there is no genuine issue of material fact in dispute, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986), and we view all evidence in the light most favorable to the nonmoving party, *see id.* at 587, 106 S.Ct. 1348. When responding to a motion for summary judgment, the nonmoving party "must come forward with specific facts showing there is a genuine issue for trial." *Id.; see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial).

**5.** As we are sitting pursuant to our diversity of citizenship jurisdiction, we apply Pennsylvania law. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.

**6.** The parties do not dispute that Mason was an at-will employee.

recognized this public-policy exception to at-will employment in *Geary.*

■ In order to make out a case under the exception, Mason must point to a clear public policy articulated in the constitution, legislation, an administrative regulation, or a judicial decision. *Hunger v. Grant Cent. Sanitation,* 447 Pa.Super. 575, 670 A.2d 173, 175 (1996). The stated mandate of public policy must be directly applicable to the employee and her actions. *Id.* at 175–76 ("It is not sufficient that the employer's actions toward the employee are unfair.").

■ The public-policy exception is generally broken down into three categories: an employer cannot (1) require an employee to commit a crime; (2) prevent an employee from complying with a statutorily imposed duty; or (3) discharge an employee when a statute specifically prohibits it from doing so. *See, e.g., Spierling v. First American Home Health Servs., Inc.,* 737 A.2d 1250, 1252 (Pa.Super.1999); *Hennessy v. Santiago,* 708 A.2d 1269, 1273 (Pa.Super.1998).

Mason sets forth various reasons for her discharge, all of which, she claims, violate public policy. Specifically, she alleges that Super Fresh fired her because: (1) she complied with her alleged duty as a pharmacist to report dispensing irregularities; (2) she cooperated with a Commonwealth investigation; (3) she filed discrimination charges against Acme; and (4) she participated in union organizing while at Acme. *See* Pls.' Br. at [13]. We will address each of these purported bases in turn.

### 1. Mason's Duty to Report Dispensing Irregularities

While working at Super Fresh, Mason uncovered what she believed to be "irregularities" in the dispensing of controlled substances. Specifically, she alleges that "they", *i.e.,* other Super Fresh pharmacists, were dispensing controlled substances to allegedly nonexistent senior citizens, and she claims that she reported this activity to Len Schwartz, the store manager, John Angelina, the store director, and an unnamed store security guard.

Mason claims that, under the Pharmacy Act, 63 Pa.Stat. Ann. § 390–1 *et seq.,* she was required to report all irregularities regarding the dispensing of controlled substances. Specifically, she invokes 63 Pa. Stat. Ann. § 390–5(a)(11) and (12), which provide that the Board of Pharmacy may revoke or suspend the license of a pharmacist who has "acted in such a manner as to present an immediate and clear danger to the public health or safety" or is "guilty of incompetence, gross negligence or other malpractice, or the departure from, or failure to conform to, the standards of acceptable and prevailing pharmacy practice." She also cites Section 27.18c, 28 P.B. 4532, which provides that a pharmacist may not knowingly fill a prescription for a controlled substance "if the pharmacist knows or has reason to know it is for use by a person other than the one for whom the prescription was written, or will be otherwise diverted, abused, or misused." She argues that these provisions rendered her "statutorily, professionally and ethically obligated to report all dispensing irregularities she encountered." Pls.' Br. at [8], and she relies on *Field v. Philadelphia Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989), to argue that this duty renders her termination unlawful. We disagree.

First, an examination of the language of the statutes Mason has cited simply does not reveal any sort of affirmative reporting duty. In contrast, the plaintiff in *Field* (an employee at a nuclear power plant) was by law specifically required to notify the Nuclear Regulatory Commission ("NRC") of any failure to follow NRC regulations and was subject to a fine if he failed to do so. The statute also specifically prohibited an employer from discharging an employee for reporting a violation. Similarly, in *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978), the plaintiff was fired for performing jury duty, which the law specifically required him to do.

Mason's case is readily distinguishable from *Field* and *Reuther,* where the plain-

tiffs were fired because they carried out specifically delineated statutory duties. Here, the alleged sources of public policy are, in fact, general guidelines for pharmacists' conduct. It is not at all apparent from the face of the statute that Mason had an affirmative duty to report suspicious behavior to the authorities, and we will not take it upon ourselves to read in such a duty absent Pennsylvania case authority.[7] Thus, while her desire to ferret out illegal activity may be laudable, it will not form the basis of a wrongful discharge claim.[8]

In *Geary*, 319 A.2d at 178–79, the plaintiff, a steel salesman, expressed concerns about the quality and safety of the steel defendant was producing. Defendant fired him, even though the product was determined to be substandard. The Pennsylvania Supreme Court held that his wrongful discharge claim failed because he was not statutorily obligated to seek out or report defective or unsafe products. *Cf. Spierling*, 737 A.2d at 1254 (holding that a plaintiff who was fired because she searched through old files in an attempt to uncover past Medicare fraud was not entitled to protection under the public policy exception, since the law imposed no duty on her to report such fraud); *Hunger*, 670 A.2d at 176 ("[A] firing which resulted solely due to an employee's decision to report his employer's illegal activities is not actionable.... The firing must be specifically prohibited by statute.").

Like the plaintiffs in these cases, Mason was not required to report suspicious activity, and her claim therefore fails. Furthermore, Mason testified at her deposition that she "didn't know off the top of [her] head" of any obligation under the Pharmacy Act to report this sort of behavior. Def.'s Br. Ex. 1, at 445. We thus find

her claim that she was carrying out her statutory duty implausible.

■ Alternatively, Mason's "duty to report" claim fails because the Pennsylvania courts have held that internal company reports will not support a wrongful discharge claim. In *McLaughlin v. Gastrointestinal Specialists, Inc.*, 696 A.2d 173, 177–78 (Pa.Super.1997), the Superior Court held that an employee who complained to her employer, but not to federal or state agencies, about workplace health hazards was not entitled to assert a wrongful discharge cause of action. *See id.* at 178 ("Although the OSHA statute expressly protects from termination the employee who files a complaint with OSHA ..., we hold that the public policy expressed therein does not go so far as to protect the employee who disrupts the orderly management of her employer's business by merely complaining within the workplace.").

Thus, Mason's purported "duty to report" is not a clearly defined public policy that will support her wrongful discharge claim.

## 2. Visits from State Investigators

During her brief tenure at Super Fresh, Mason received visits from Ethel Marrow of the Pennsylvania Bureau of Professional and Occupational Affairs and (allegedly) Joseph McCabe, a narcotics agent from the Bureau of Narcotics Investigation of the Pennsylvania Attorney General's Office. Marrow, who was investigating Mason in connection with the Apidex tablets that were missing from Acme, made an unannounced visit to Super Fresh on May 28, 1997 to arrange a meeting. *See* Def.'s Br. Ex. 6, at Ex. A. McCabe visited the Cottman Avenue store before its grand

---

7. As far as we know, the pharmacists' code of conduct contains no analogue to Rule 8.3(a) of Pennsylvania's Rules of Professional Conduct for lawyers, which provides that:

A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.

8. Mason would have a stronger case if she claimed that Super Fresh had fired her because she refused to fill prescriptions she considered suspicious. She does not so allege.

opening. His visit apparently had nothing to do with Mason and was, according to her own testimony, just a "normal inspection." *Id.* Ex. 1, at 407.

■ Mason argues that Super Fresh fired her because of her cooperation with Marrow,[9] *i.e.,* "because of her willingness to cooperate with an investigation that *may have involved Super Fresh.*" Pls.' Br. at [14] (emphasis in original). She argues that this violates public policy. We reject her argument, for several reasons.

First, there is no evidence that Marrow was investigating anything other than the pills missing from Acme. *See* Def.'s Br. Ex. 6, at Ex. A (Marrow's *report,* listing the "origin and details of [the] complaint" as "Acme's ongoing investigation regarding the loss of control[led] substance of their pharmacy department"); *id.* (Marrow's report of "action taken" stating that she "requested that [Mason] contact me immediately to discuss her prior employment with Acme"). Thus, Mason's assertion that Super Fresh was worried that *it* would be implicated in Marrow's investigation is groundless.

Also, Mason fails to identify any public policy implicated by her cooperation with an investigation into *her own* (potentially criminal) alleged wrongdoing. Holding Super Fresh liable under such a theory would, at a minimum, be a perverse expansion of a very narrow exception to the at-will doctrine. Super Fresh indisputably could have fired Mason upon learning of her alleged theft of pills from Acme; it does not lose this ability simply because a state investigator came knocking.

Furthermore, there is no evidence that any Super Fresh employee knew *why* the investigators were speaking with Mason. Marrow stated in her report that she was "careful that no one could hear [their] conversation." Def.'s Br. Ex. 6, at Ex. A. Mason does not claim that she and Marrow discussed anything other than scheduling a meeting during Marrow's visit to Super Fresh. Thus, the allegation that Marrow's visit played a role in Mason's termination is pure speculation.

In short, we hold that Mason has failed to adduce evidence to support her theory that Super Fresh fired her based on the Commonwealth's investigation. We also find that the claim that such a firing violates public policy fails as a matter of law.

### 3. Mason's Discrimination Charge Against Acme

■ Mason next argues that Super Fresh fired her because of her sex discrimination claim against *Acme,* not Super Fresh. After Acme suspended and later fired her, Mason and her husband filed an EEOC charge and ultimately a civil complaint against it. *See* Def.'s Br. Ex. 5. Mason is attempting to rely on Title VII and the PHRA as the source of public policy; however, because these statutes provide their own remedies, they cannot form the basis of a common-law wrongful discharge claim. *See, e.g., Clay,* 559 A.2d at 918 ("[T]he PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination.").

Both Title VII and the PHRA prohibit retaliation for filing a charge of discrimination,[10] *see* 42 U.S.C. § 2000e–3(a) (West 1994) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or

---

**9.** Mason appears to have abandoned her argument that Super Fresh fired her because of McCabe's visit. In any event, this theory of liability doe not withstand even superficial scrutiny, since by Mason's own admission McCabe was conducting only a routine inspection, and there is no evidence of any unusual "cooperation" on Mason's part.

**10.** Mason attempts to draw a (largely unarticulated) distinction based on the fact that her *current* employer discriminated against her because of her complaint against a *former* employer. There is no basis for such a distinction in the language of Title VII or of the PHRA.

because he has made a charge … under this subchapter."); 43 Pa.Stat. Ann. § 955(d) (West Supp.1999) ("It shall be an unlawful discriminatory practice … for any … employer … to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act."). Thus, as these statutes prohibit retaliation for opposing discrimination, they also preempt Mason's common-law claim for wrongful discharge based on such alleged retaliation. *See, e.g., Jacques v. Akzo Int'l Salt, Inc.,* 422 Pa.Super. 419, 619 A.2d 748, 753 (1993) ("It is well-settled that the courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available.").

### 4. Participation in Union–Organizing at Acme

■ Finally, Mason argues that Super Fresh fired her because she was a "ringer" for a union while working at Acme and that her termination therefore violates the policy of the Labor–Management Relations Act, 29 U.S.C. § 157 *et seq.* ("LMRA"). *See* Compl. ¶ 38. Our analysis of this theory is similar to our analysis of Mason's discrimination/retaliation theory: her common law claim is preempted by statute. Since federal labor law provides a remedy for the conduct that forms the basis of this claim, Mason may not rely on it as a source of public policy.

In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 242–44, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that, if a cause of action implicates protected concerted activity under Section 7 of the National Labor Relations Act, 29 U.S.C. § 141 *et seq.* ("NLRA"), or conduct that would be prohibited as an unfair labor practice under Section 8 of the NLRA, the cause of action is preempted. *See also Belknap, Inc. v. Hale,* 463 U.S. 491, 498, 103 S.Ct. 3172, 77 L.Ed.2d 798 ("[S]tate … causes of action are presump-

tively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]. The state … cause of action may, however, be sustained if the behavior … is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility.").

Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations … and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157 (West 1998). Section 8 provides that "[i]t shall be an unfair labor practice for an employer … to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7] of this title," 29 U.S.C. § 158(a)(1), or "by discrimination in regard to hire or tenure of employment … to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

It is clear from these provisions that the NLRA covers, and therefore preempts, an action based on discharge for union organization.[11] *See, e.g., Mollick v. Beverly Enters.,* 1997 WL 634496, at *2 (E.D.Pa. Sept.29, 1997) ("Plaintiff alleges that she was terminated for her involvement in union organizing activities.... [Defendant's] conduct, taken as true, clearly constitutes an unfair labor practice under 29 U.S.C. § 158.... Unless plaintiff can show that the NLRA does not apply to her claim [*i.e.,* by demonstrating that she qualifies as a "supervisor" under the Act], we must conclude that any common law claim for wrongful termination that may exist under state law will be precluded by the NLRA."); *Williams v. Salem Tube, Inc.,* 1990 WL 360125, at *10 (Pa.Com.Pl. June 25, 1990) ("Thus, in the instant case, the allegations of discharge in violation of …

---

**11.** Because the statute of limitations for claims based on unfair labor practices is six months, *see* 29 U.S.C. § 160(b), and because the unfair labor practice in this matter alleg-

edly occurred on July 3, 1997 (when Mason was terminated), Mason cannot at this late date amend her complaint to add a cause of action under the NLRA.

the NLRA set forth a discharge in violation of clear mandates of public policy. However, this Court's jurisdiction over such a cause of action is preempted by the NLRA.").

We therefore conclude that all of Mason's theories of discharge in violation of public policy fail as a matter of law.

### 5. Super Fresh had Ample Legitimate Bases on Which to Terminate Mason

In *Burkholder v. Hutchison*, 403 Pa.Super. 498, 589 A.2d 721, 723 (1991), the Pennsylvania Superior Court held that "even when an important public policy is involved, an employer may discharge an employee if he has separate, plausible and legitimate reasons for doing so." *See also Cisco v. United Parcel Servs.*, 328 Pa.Super. 300, 476 A.2d 1340 (1984).

 Super Fresh had at least three plausible legitimate bases on which to fire Mason. First, as she admitted during her deposition, she lied on her application for employment when she claimed to be then employed by Acme and stated that she was leaving that position because it offered "no room for advancement". The application Mason filled out (and affirmed the truth of) states that "any misrepresentation, falsification, or willful omission [in the application] shall be sufficient reason for dismissal from ... employment." Def.'s Br. Ex. 3.

Second, it is undisputed that Mason, on at least one occasion, gave a customer the wrong prescription. *See id.* Exs. 15–16, Ex. 18 at 23. And third, Super Fresh employees discovered that Mason had ordered a large quantity of phenteramine, the generic form of Apidex, in contravention of Super Fresh's protocol for ordering drugs. They also discovered that large numbers of phenteramine tablets were unaccounted for. *See id.* Ex. 2, at 86–100.[12]

Any one of the above is a plausible basis for Mason's termination. Thus, her wrongful termination claim fails on this alternative ground.

### Roy Mason's Claim for Loss of Consortium

Because we have dismissed all of Carol Mason's claims, we must also dismiss her husband's claim for loss of consortium. *See, e.g., Schroeder v. Ear, Nose, & Throat Assocs.*, 383 Pa.Super. 440, 557 A.2d 21, 22 (1989) ("Any action for loss of consortium is derivative, depending for its viability upon the substantive merit of the injured party's claims."); *Gatter v. Zappile*, 67 F.Supp.2d 515 (E.D.Pa.1999) (citing *Schroeder*).

An Order follows.

### ORDER

AND NOW, this 14th day of April, 2000, upon consideration of defendant's motion for summary judgment and plaintiffs' response thereto, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendant's motion is GRANTED;

2. JUDGMENT IS ENTERED in favor of defendant Super Fresh and against plaintiffs Carol A. Diberardinis–Mason and Roy Mason; and

3. The Clerk shall CLOSE this case statistically.

---

12. Super Fresh also argues that Mason's significant performance problems provided a basis on which to terminate her; however, because Mason argues that there were, in fact, no problems with her job performance, we cannot rely on this as a basis.